```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
―――――――――――――――――――――――――――――

JAQUAN CANTY,

                              Plaintiff,        **No. 6:14-cv-06713(MAT)**
                                                           **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.
―――――――――――――――――――――――――――――

## I.  Introduction

Represented by counsel, Jaquan Canty ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act, challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion.

## II.  Procedural Status

On July 6, 2012, Plaintiff protectively filed a claim for SSI, alleging disability beginning on September 7, 2008, based on inflammatory colitis, history of *C. difficile* colitis, Crohn's disease,[1] inflammatory bowel disease, history of learning disorder

---

[1] Plaintiff was diagnosed with Crohn's disease in April of 2006. T.245.

with borderline intelligence, major depressive disorder, oppositional defiant disorder ("ODD"), and history of attention deficit disorder ("ADHD"). E.g., T.243.[2] The application initially was denied on September 26, 2012. Plaintiff requested a hearing, which was held by Administrative Law Judge Rosanne M. Dummer ("the ALJ") on April 16, 2013 via videoconference. Plaintiff appeared with his attorney and testified, as did a vocational expert ("the VE"). The ALJ issued an unfavorable decision on May 2, 2013. T.13-31. After the hearing, Plaintiff submitted additional records to the Appeals Council, but on November 4, 2014, the Appeals Council denied Plaintiff's request for review. The ALJ's decision therefore became the Commissioner's final decision. This timely action followed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The parties have submitted comprehensive factual recitations contained in the parties' briefs, which the Court adopts and incorporates by reference. The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions. For the reasons that follow, the Court reverses the Commissioner's decision and remands

---

[2] Numbers preceded by "T." refer to pages from the administrative transcript, submitted by Defendant as a separately bound exhibit.

the matter for further administrative proceedings consistent with this opinion.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

**IV.     The ALJ's Decision**

The ALJ followed the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T.20. At step two, the ALJ found that Plaintiff has the following "severe"

impairments: inflammatory bowel disease with a history of noncompliance; history of ADHD; depressive disorder; ODD; learning disability; and history of substance abuse disorder. T.20.

At step three, the ALJ determined that Plaintiff did not meet or equal any listed impairment, including Listings 5.06 (Inflammatory Bowel Disease) Listing 12.04 (Affective Disorders), and 12.05 (Intellectual Disability). The ALJ then assessed Plaintiff with the residual functional capacity ("RFC") to

> [l]ift/carry fifty pounds occasionally and twenty-five pounds frequently; sit six of eight hours; and stand/walk six of eight hours. He can occasionally climb ramps and stairs. Secondary to mental limitations, he is able to understand, remember, and carry out short simple instructions. He is able to sustain attention for simple tasks for extended periods of two-hour segments in an eight hour day. He is able to tolerate at least brief and superficial contact with others and on an occasional basis with the public. He is able to adapt to changes as needed for simple, routine, repetitive type tasks. He can perform work, which allows for flexibility to use the restroom 1-2 times per shift outside of customary work breaks.

T.22.

At step four, the ALJ noted that Plaintiff was "only age 22 and appear[ed] to have worked briefly as a dietary aide (medium level, unskilled), and in [sic] fast food cook (medium level, skilled, gut generally performed at the unskilled level)," but only nominal earnings were reported. Therefore, Plaintiff had no past relevant work. As of the application date, Plaintiff was 21 years old and therefore a "younger individual" under the Regulations. He

had a limited education insofar as he had studied for but not obtained his GED, and the ability to communicate in English. T.29. The ALJ relied on the VE's hearing testimony to find that there are jobs that exist in significant numbers in the national economy that can be performed by a person of Plaintiff's age, and with his education, vocational experience, and RFC. The ALJ cited the representative occupations identified by the VE, namely, janitor and kitchen helper (unskilled, medium), and laundry worker, office cleaner, and cafeteria attendant (unskilled, light). T.30. Therefore, the ALJ found that Plaintiff was not disabled. T.30.

**V.    Discussion**

    **A.    RFC Unsupported by Substantial Evidence**

Plaintiff argues that, contrary to the ALJ's assertion, the opinion of consultative physician Dr. Karl Eurenius contradicted her RFC assessment and was, in part, too vague to constitute substantial evidence. Therefore, Plaintiff argues, the ALJ improperly substituted her own lay opinion as the basis for the RFC, rather than actual medical evidence or opinion.

Pursuant to Social Security Ruling ("SSR") 83-10, RFC is defined as follows: "A medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). . . ." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "As explicitly stated in the regulations, RFC is a

medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." Gray v. Chater, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)); other citation omitted).

The ALJ's RFC assessment provided in pertinent part that Plaintiff could "[l]ift/carry fifty pounds *occasionally* and twenty-five pounds *frequently*; sit six of eight hours; and stand/walk six of eight hours." T.28. (emphases supplied). According to the ALJ, the report of consultative physician Dr. Eurenius "was not contradicted by the [RFC]." T.28. As discussed further below, the Court disagrees.

During Dr. Eurenius' examination of Plaintiff on August 27, 2012, Plaintiff complained of "left upper quadrant [abdominal] pain and diarrhea frequently with blood in his bowel movements." T.648. Plaintiff currently was taking Asacol and prednisone for his Crohn's disease, and Wellbutrin for his depression. T.648. On examination, Dr. Eurenius noted decreased bowel sounds and tenderness in the left upper quadrant of the abdominal region with minimal rebound. T.650. For his medical source statement, Dr. Eurenius opined that Plaintiff was "moderately limited in activities which would keep him away from toilet facilities or repetitive exertional activities which increase his abdominal pain and diarrhea." T.650.

SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time[,]" i.e., "no more than about 2 hours of an 8-hour workday." 1983 WL 31251, at *5. "Frequent" means "occurring from one-third to two-thirds of the time[,]" i.e., "approximately 6 hours of an 8-hour workday." Id. at *6. SSR 83-10 notes that in "most" jobs at the medium exertional level, "[b]eing able to do *frequent* lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." Id. at *6. SSR 83-10 further explains that "[t]he *considerable* lifting required for the full range of medium work usually requires *frequent* bending-stooping," i.e., "a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist." Id. (emphases supplied).

As noted above, Dr. Eurenius's opinion was that Plaintiff is "moderately limited in . . . repetitive exertional activities which increase his abdominal pain and diarrhea." Based on the definitions contained in SSR 83-10, the ALJ's RFC assessment cannot be consistent with Dr. Eurenius's restrictions, because it effectively requires Plaintiff to engage in "considerable" lifting and carrying by "frequently" bending and stooping at the waist to lift and carry objects weighing up to 25 pounds. The ALJ also is incorrect in characterizing her RFC as limiting Plaintiff to "medium level work, with *occasional* postural movements, to the extent that heavy work

and repetitive activity may exacerbate abdominal issues." T.28 (emphasis supplied). As noted above, medium level work entails frequent bending and stooping and considerable lifting, as opposed to occasional bending, stooping, and lifting. See SSR 83-10, 1983 WL 31251, at *6. The ALJ's assertion that her RFC assessment is consistent with Dr. Eurenius's report and with the Commissioner's own regulations is legally incorrect and unsupported by substantial evidence.

The other key component of the ALJ's RFC assessment pertains to the frequency of Plaintiff's need to take bathroom breaks, and the duration of those breaks. According to the ALJ, Plaintiff can perform a job that "allows for flexibility to use the restroom 1-2 times per shift outside of customary work breaks." The ALJ noted that, per the VE's testimony, normal breaks occur every two hours, and a lunch break is 30 to 60 minutes. T.30. Plaintiff testified at the hearing that he has to use the bathroom eleven times a day, and about two to three times per month, he has accidents where he cannot control his bowels and soils himself. T.56, 67. He testified that if he walks for too long, he will need to use the bathroom so badly that he "c[ould]n't even hold it." T.56. Upon questioning by Plaintiff's attorney, the VE testified that unskilled jobs such as the ones identified tolerate a person being off-task only about 10 percent or less of the time. T.31. The VE testified that if a person is away from his workstation 10 percent or more of the day

consistently, due to having to use the bathroom, that person would not be able to perform and sustain full-time employment. T.78. The VE commented that "the unpredictability of [Plaintiff's] need to use the restroom, as well as he said he has some accidents, which, especially defecation, can . . . create an aroma and not be good for any type of work situation." T.78.

The ALJ rejected the hypotheticals presented by Plaintiff's attorney because she found "[n]o evidence corroborates that the claimant's abdominal issues are to the extent alleged, or that extra time for restroom breaks is warranted." T.30; see also T.27 ("[T]he alleged frequency and extent of bathroom breaks are not corroborated."). The ALJ did not identify the nature or extent of the corroboration of Plaintiff's bowel movements she would have required. Nor did the ALJ explain how Plaintiff—an ambulatory adult who does not need or require someone to help him use the bathroom—plausibly could have obtained corroborative evidence of the frequency and duration of his trips to the bathroom to move his bowels. Moreover, treatment notes by Plaintiff's medical providers indicate that Plaintiff has reported having more than eleven bowel movements per day. See T.479, 537 (for the three weeks prior to his admission to the hospital on or about December 29, 2011, Plaintiff was having "hematochezia daily and for past few days, has been moving his bowels 15 to 20 times per day"); T.499-500 (on admission to hospital on November 27, 2011, Plaintiff reported 12 bowel

movements (watery, bloody stools) per day for the last 3 to 4 weeks and left-sided abdominal pain rated at 10/10 on the pain scale). Plaintiff's medical providers did not require him to provide corroboration of his bowel-related symptoms before admitting him to the hospital. Particularly in light of the facts that Plaintiff is not in the hospital (where it is at least plausible that his bowel movements would be tracked by nursing staff) and is capable of toileting himself, the ALJ's demand for corroborative evidence of the frequency and duration of his bowel movements is unreasonable.

Furthermore, the ALJ cannot rely on Dr. Eurenius' opinion as substantial evidence to support the aspect of her RFC assessment regarding Plaintiff's need for bathroom breaks. As noted above, Dr. Eurenius opined that Plaintiff is "moderately limited in activities which would keep him away from toilet facilities." The Court notes that Social Security regulations do not define the term "moderate." E.g., Figueroa v. Astrue, No. ED CV 10-385-E, 2010 WL 3789576, at *2 n. 3 (C.D. Cal. 2010) (citation omitted). The phrase used by Dr. Eurenius, "*activities* which would keep him *away* from toilet facilities," also is subject to a wide range of interpretations. Given the unpredictable nature of Crohn's disease, which is characterized by "[p]ersistent [d]iarrhea," the "[u]rgent need to move bowels," and the "[s]ensation of incomplete

evacuation,"[3] among other symptoms, the types of "activities" Plaintiff could tolerate and how far "away" he could be from a toilet facility at any time could change from day to day. The ALJ, without a discernible rationale, interpreted this vague statement by Dr. Eurenius as being consistent with work that allows for "flexibility" to use the restroom one to two times beyond customary work breaks. This was error. See, e.g., Andrews v. Colvin, No. 13 CIV.2217 RWS, 2014 WL 3630668, at *11 (S.D.N.Y. July 22, 2014) (consultative physician stated Plaintiff had "moderate limitations to squatting, lifting and carrying, pushing and pulling secondary to back pain"; court found "the ALJ erred in relying on the doctor's vague, non-specified notes regarding Plaintiff's ability to squat, lift, carry, push and pull") (citing Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013)). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotation omitted). That inquiry was not undertaken here.

For the multiple reasons discussed above, the ALJ's RFC assessment is the product of legal error and is unsupported by substantial evidence. Accordingly, remand is required.

---

[3] http://www.ccfa.org/what-are-crohns-and-colitis/what-is-crohns-disease (last accessed Dec. 13, 2015).

## B. Erroneous Credibility Assessment

Plaintiff contends that the ALJ erred in analyzing the credibility of his subjective complaints of pain and other limitations resulting from his impairments, in particular by unjustifiably penalizing him for noncompliance with treatment. The fact that a claimant is not fully compliant with prescribed treatment or medications does not preclude a finding of disability. See, e.g., Frankhauser v. Barnhart, 403 F. Supp.2d 261, 277 (W.D.N.Y. 2005) ("Nor does the fact that Plaintiff often failed to fully comply with his prescribed treatment require a finding of 'not disabled.'"). Rather, "[c]ompliance with prescribed treatment that is capable of restoring a plaintiff's ability to work is required to obtain benefits, unless there is a good reason for not following prescribed treatment." Id. at 277-78 (citing 20 C.F.R. §§ 404.1530, 416.930). "[T]he ALJ has an obligation to take the claimant's mental limitations into account in determining whether such a failure truly reflects an improvement in his condition." 20 C.F.R. §§ 404.1530(c), 416.930(c). Where, as here, an ALJ draws an adverse credibility inference against a claimant based on a failure to follow prescribed treatment, SSR 96-7p 1996 WL 374186 (S.S.A. July 2, 1996), provides that such an inference may not be made "without first considering any explanations that the individual may provide, or other information in the case record

that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7.

Plaintiff asserts that the ALJ did not evaluate properly the reasons why he was not consistently compliant with his medications, which included his below age-level maturity and independent living skills, as well as his lack of health insurance. For instance, following a progress conference in April 2009 from the Lasalle School, a boarding school in Albany where Plaintiff was sent after his birth mother relinquished her parental rights over him and his seven siblings, the staff wrote that although Plaintiff was almost nineteen, he was "much younger" "developmentally" and therefore had not achieved independent living skills appropriate for his age-level. T.745. It was noted that Plaintiff "continues to struggle with his mental health issues [low-grade depression], which is [sic] preventing him from making adequate gains in learning independent living skills." T.746. In August 2012, consultative psychologist Dr. Christine Ransom confirmed that Plaintiff has major depressive disorder, currently moderate, and probable borderline intellectual capacity. T.654. Dr. Ransom's report indicated that Plaintiff's insight and judgment were "fair" because he was not in treatment for his depression. However, the ALJ failed to consider whether poor judgment stemming from Plaintiff's probable borderline intellectual functioning, depressive disorder, developmental immaturity, or a combination of these factors,

contributed to his inconsistency in maintaining a prescribed treatment regimen. See, e.g., Kennerson v. Astrue, No. 10-CV-6591(MAT), 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012) ("[T]he ALJ failed to take into account Plaintiff's borderline intellectual functioning and lack of insight into her own limitations, which were likely contributors in her failure to continue mental health treatment.").

With regard to Plaintiff's lack of insurance, he testified that when he first was diagnosed with Crohn's disease, he was living at the Lasalle School. His medication was paid for and managed by the school, and he "didn't have to miss a day." T.68 Outside of that structured setting, Plaintiff testified, he had difficulty obtaining the necessary care due to denials by Medicaid, which led to periods of being uninsured,[4] during which he could not purchase his medications. Plaintiff testified that one of the reasons he went to the hospital was because he could obtain medications there; however, once he was discharged, he would receive a bill he could not afford, and still could not pay for his medications because he lacked insurance. An ALJ is not permitted to penalize a claimant for being unable to afford further medical treatment. E.g., Pierce v. Astrue, 946 F. Supp.2d 296, 307

---

[4] A hospital note dated November 3, 2009, indicates that Plaintiff "had been under the care of a pediatric gastroenterologist taking 6-MP and Liaida but was then incarcerated and since released in 7/09 has not been on any medications and could not get an adult GI appointment until 2/10." T.603; see also T.616 (he has "not been on any meds since 7/09 after leaving juvinile [sic] home").

(W.D.N.Y. 2013) ("Given the remedial purpose of Social Security, courts generally take the view that '"[i]t flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because he is too poor to obtain treatment that may help him."') (quotation and citations omitted; alteration in original); see also McGregor v. Astrue, 993 F. Supp.2d 130, 142–43 (N.D.N.Y. 2012) (noting that ALJ erred by failing to consider claimant's testimony that he did "not have health insurance, which certainly provide[d] an explanation for failing to seek treatment").

The ALJ also appeared to penalize Plaintiff for being noncompliant due to what one of his doctors characterized as "challenged social circumstances." T.705. Read in context, this was referring to Plaintiff's difficulties obtaining transportation. Plaintiff's lack of insurance, unstable family structure, and mental impairments also constitute "challenged social circumstances." In any event, it is not a proper basis for finding Plaintiff less credible.

Finally, rather than discussing the required credibility factors set forth in 20 C.F.R. § 416.929 and SSR 96-7p[5] the ALJ

---

[5] SSR 96-7p states that "20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used

relied heavily on Plaintiff's demeanor during the hearing to reject his subjective complaints. See T.27 ("[T]he undersigned has considered and made reductions based upon the claimant's demeanor as a witness."). However, the ALJ did not explain what about Plaintiff's demeanor was so "poor" that it warranted "reductions" in his credibility. The Court recognizes that Plaintiff has been incarcerated and has, by his own admission, abused marijuana as a means to cope with his depression and pain. However, "[e]very effort should be made to separate a claimant's personality, however unsympathetic, from the evaluation of [his] physical [and mental] impairments." Martinez v. Heckler, 629 F. Supp. 247, 251 (E.D.N.Y. 1986). The ALJ also found that Plaintiff's "demeanor" justified her RFC assessment and adequately accounted for his limitations. See T.27 ("[T]he undersigned has found his credibility as a witness to be poor and his demeanor during the hearing consistent with the limitations established in his residual functional capacity."). The hearing lasted 52 minutes, T.49, 79, and Plaintiff neither had to use the bathroom nor did he have an accident. Presumably, this is what the ALJ meant by her assertion that her RFC assessment was "consistent" with Plaintiff's "demeanor." This is akin to the disfavored "sit and squirm" test, whereby an ALJ discounts a claimant's pain complaints because he can sit through a hearing.

---

to relieve pain or other symptoms . . .; and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 1996 WL 374186, at *3 (emphasis supplied).

The "mere fortuity" that Plaintiff did not lose control over his bowels during the course of the hearing should not be found to outweigh the medical evidence outlining Plaintiff's history of flares and exacerbations of his Crohn's disease. See Pascariello v. Heckler, 621 F. Supp. 1032, 1037 (S.D.N.Y. 1985) (finding error where the ALJ disregarded the medical evidence of a rigid bladder neck and the diagnosis of incontinence, by reliance on the fact that the plaintiff refused corrective surgery, his observation of plaintiff's demeanor, plaintiff's statements that he would occasionally drive his car and plaintiff's inconsistent testimony concerning the use of an incontinence product) (citation omitted).

### C. Appeals Council's Failure to Review Plaintiff's Case Based on New Evidence

New evidence submitted to the Appeals Council becomes part of the administrative record. Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council will consider new evidence, along with the entire administrative record, only if (1) the evidence is material, and (2) the evidence relates to the period on or before the ALJ's hearing decision. 20 C.F.R. § 404.970(b). The Appeals Council "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id.

Plaintiff argues that the Appeals Council's conclusory denial of review was erroneous. See Pl's Mem. 14-16. In particular, Plaintiff cites the letter dated May 26, 2013, from Certified

Physician Assistant Thomas W. Sorber ("PA-C Sorber") stating that Plaintiff was treated from May 20, 2013, to May 26, 2013, as an inpatient at Strong Memorial Hospital for an acute exacerbation of Severe Crohn's Disease.[6] T.764. PA-C "clarif[ied] [that] this illness results in frequent episodes of abdominal pain and increased bowel movements." Id. PA-C Sorber stated, "It is my recommendation that [Plaintiff] should be allowed to take more frequent bathroom breaks and his work week should be limited to 20 hours." Id.

Because the Court is remanding for further proceedings, it need not determine if the Appeals Council's denial of review was correct in light of the newly submitted records. These records, including PA-C Sorber's letter, have become part of the administrative record. The ALJ will be obliged to consider them on remand.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt #11) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #9) is granted. The

---

[6] Severe Crohn's Disease is distinguishable from Mild Crohn's Disease. In Mild Crohn's Disease, the patient has fewer bowel movements, no or minimal abdominal pain, and a sense of well-being that is normal or close to normal. By contrast, in Severe Crohn's Disease, "the patient has bowel movements frequent enough to need strong anti-diarrheal medication," "severe" abdominal pain usually located in the lower right quadrant of the abdomen, a poor sense of well-being and experiences complications that may include weight loss, joint pain, inflammation in the eyes, reddened or ulcerated skin, fistulas, abscesses, and fever." https://umm.edu/health/medical/reports/articles/crohns-disease (last accessed Dec. 13, 2015).

Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to re-assess Plaintiff's RFC in light of the records submitted to the Appeals Council in connection with the prior administrative proceeding; evaluate any medical opinions in those new records in accordance with the applicable factors; re-contact Dr. Eurenius for clarification of the ambiguities in his consultative opinion as discussed at length above; re-evaluate Plaintiff's credibility in accordance with the required regulatory factors and SSR 96-7p; and perform a new step five analysis.

**SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   December 16, 2015
         Rochester, New York